UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE BETANCOURT, et al.

Plaintiffs,

v.                              Civil No. 97-1458(DRD)

NYPPY, INC., et al.

Defendants

*****************************

**OPINION AND ORDER**

**1. Background**

On March 31, 1997, Jose Betancourt, Humberto Betancourt and Angela Cabiya, Plaintiffs, filed a civil action for statutory, punitive and general damages against Nippy Inc., John Houston, Whitney Houston, Thomas L. Weisenbeck, Bressler, Amery & Ross P.C. (BA&R), William Morris Agency Inc. (WMA Inc.), William Savoy (named as Richard Doe), Kim Jones et al., pursuant to the Federal Wiretap Act, 18 U.S.C. §2510 et seq., the New Jersey Wiretap Act, N.J.S.A. 2A:156A-1 et seq., and the laws of the Commonwealth of Puerto Rico, P.R. Laws Ann. tit. 31, §5141. Plaintiffs base their complaint on the alleged illegal interception, use and disclosure of their taped telephone conversations by defendants.

On August 1, 2000, co-Defendants severally filed respective Motions for Summary Judgment (Docket Nos. 86, 89, 91 and 92). In addition, co-Defendants Thomas L. Weisenbeck and BA&R filed a Motion to Dismiss (Docket No. 90) and a Supplemental Motion to Dismiss (Docket No. 111) based on lack of subject matter jurisdiction, premised on the invalidity of the federal claim. The parties thereafter filed multiple oppositions, replies and sur-replies (Dockets

1

Nos. 97, 99, 102, 104, 105, 107, 116, and 117). Since the Court considered all briefs submitted by the parties, the corresponding requests for extensions of time (Docket Nos. 108 and 115) and for leave to file briefs (Docket No. 109, 110, and 119) are deemed **GRANTED**. In addition, for the reasons set forth below, the respective Summary Judgment Motions (Docket Nos. 86, 89, 91 and 92) are hereby **GRANTED**, the Motion to Dismiss (Docket No. 90) and Supplemental Motion to Dismiss (Docket No. 111) are therefore **DENIED/MOOT**, and the instant civil action is **DISMISSED WITH PREJUDICE**. Accordingly, co-Defendants WMA Inc., Kim Jones and William J. Suvoy's Motion to Compel Discovery is **DENIED/MOOT**.

The Court notes that the alleged violations of the federal and New Jersey wiretap prohibitions are the only disputes properly before the Court. Plaintiffs have submitted several amended complaints in an attempt to include claims that sound in breach of contract, defamation, fraud and malicious prosecution. For a number of reasons,[1] the Court struck these complaints, and in an Order issued on September 12, 2000 (Docket No. 103), announced that the original complaint (Docket No. 1) would remain the sole live pleading. Notwithstanding, the Court **DENIES** co-Defendants Thomas L. Weisenbeck and BA&R's Motion to Strike Portions of Plaintiffs' Statement of Contested Facts and Exhibits in Support Thereof (Docket No. 112). Without adopting Plaintiffs' flowery prose, the Court agrees that "intent does not exist in a

---

[1] The Court struck down the Second Amended Complaint because it contained redundant, impertinent and scandalous matter in contravention of Fed. R. Civ. P. 12(f) and Plaintiffs refused to redact it after several warnings from the Court. More importantly, the amended complaints constituted an ongoing attempt by Plaintiffs to litigate their breach of contract, fraud and defamation claims against Defendants notwithstanding the ruling by Chief Judge Laffite in Nippy, Inc. v. Pro-Rok Inc., et al., USDC-PR 94-1766 (HL), that these allegations were mandatory counterclaims that had been waived pursuant to Fed. R. Civ. P. 13(a).

vacuum of time, nor does motivation arise out of nowhere and propel itself to a goal without an intentional primum mobile." (Plaintiffs' Opposition to Motion to Strike Amended Complaint, Docket No. 76 at p.2). Accordingly, the Court considered Defendants' evidence and exhibits (to the extent they would be admissible to the jury) and generalized recitals of grievances only insofar as they would be potentially relevant to the wiretap claim, generally, and to the question Defendants' purpose in making the recording, specifically.

**2. Undisputed Facts**

On March of 1994, co-Plaintiff Jose Betancourt, as President of Pro-Rok, Inc., entered into a contract with co-Defendant Nippy, Inc., represented by co-Defendant the William Morris Agency, Inc. for the purpose of presenting a concert featuring well-known singer and co-Defendant Whitney Houston in San Juan, Puerto Rico on April 24, 1994. Throughout the contract negotiations, Nippy Inc. served as the management and production agency for Ms. Houston. In addition, co-Defendant law firm Bressler, Avery and Ross, specifically attorney Thomas Weisenbeck, served as legal counsel to Nippy Inc. and Ms. Houston.

From March 15, 1994 through April 24, 1994, Plaintiffs engaged in several telephone conversations with representatives of Nipply Inc., including co-Defendants Thomas Weisenbeck and Kim Jones, in which they discussed the interpretation and implementation of specific clauses of the contract. Three of those telephone conversations, one on April 17, 1994 and two on April 18, 1994 were recorded in New Jersey by Defendant Mr. Weisenbeck, and allegedly other

3

defendants,[2] without the knowledge or consent of Plaintiffs. Following the concert, on June 3, 1994, Nippy Inc. filed a civil lawsuit (the RICO civil lawsuit) under the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. §1962, captioned Nippy, Inc. v. Pro-Rok Inc., et al., USDC-PR 94-1766 (HL), against now co-Plaintiffs Jose and Humberto Betancourt, and their erstwhile production company, Pro-Rok, Inc. Almost two years later, on April 26, 1996, Nippy proffered transcripts of the secretly recorded conversations as impeachment evidence against co-Plaintiff Jose Betancourt. Shortly thereafter, on June 28, 1996, Plaintiffs voluntarily withdrew their RICO lawsuit with prejudice, as ratified by Chief Judge Hector Laffitte in Nippy, Inc. v. Pro-Rok, Inc., 932 F.Supp. 41 (D.P.R. 1996).

On March 31, 1997, Plaintiffs filed the instant civil action for statutory, punitive and general damages against Defendants, pursuant to the Federal Wiretap Act, the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq. and the Constitution and laws of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141. Plaintiffs claim damages for the alleged illegal interception, use and disclosure by Defendants of the telephonic conversations between certain of the Plaintiffs and Defendants. Prior to the instant skirmish, adopted Magistrate Judge Justo Arenas' Report and Recommendation (Docket No. 15) holding that the laws of that state of New Jersey, and not Puerto Rico, governs the legality of the interception.

---

[2] The extent to which individual defendants participated, knew about, or consented to Mr. Weisenbeck's actions has been the subject of great contention among the parties, and the vast majority of Plaintiffs' proffered evidence addresses this question.

AO 72
(Rev 8/82)

### 3. Standard for Summary Judgment

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. Serapion v. Martinez, 119 F.3d 982, 986 (1st Cir.1997) (citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995) collecting cases). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). To defeat a motion for summary judgment, the resisting party must show the existence of "a trial worthy issue as to some material facts." Cortes-Irizarry, 111 F.3d at 187. A fact is deemed "material" if the same "potentially affect[s] the suit's determination." Garside v. Osco Drug Inc., 895 F.2d 46, 48 (1st Cir. 1990). "An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-Irizarry, 111 F.3d at 187. Defendant, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." Vega-Rodriguez, 110 F.3d at 178. Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment," Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood . . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The facts must be examined under the above criteria because on a potential appeal the appellate court

examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." <u>Vega-Rodriguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

### 4. Plaintiffs' Causes of Action

Plaintiffs' federal cause of action arises under Title III of the Omnibus Crime Control and Safe Streets Act (Title III), which prohibits all interceptions other than those specifically excepted. Section 2511(2)(d) specifically provides that, where a party to the conversation consents to the interception, there is no liability unless the communication is intercepted for "the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." In contrast, Section 2A:156A-4 of the New Jersey Wiretapping and Electronic Surveillance Control Act (NJWESCA) imposes liability upon the interceptor who records the communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State *or for the purpose of committing any other injurious act*" (emphasis added). While the federal statute was amended in 1986, due to significant constitutional challenges on vagueness grounds, <u>see</u> <u>Boddie v. American Broad. Cos.</u>, 881 F.2d 267 (6th Cir. 1989), the New Jersey anti-wiretap statute has retained the full scope of the original prohibition.

Underlying the New Jersey Electronic Surveillance Act was a "legislative intent... simply to follow the federal act." <u>State v. Fornino</u>, 223 N.J.Super. 531, 539, 539 A.2d 301 (App.Div.1988). Thus, it largely mirrored the federal statute, <u>State v. Minter</u>, 116 N.J. 269, 561 A.2d 570 (1989), and New Jersey courts "have looked to constructions of the federal act when

6

interpreting the New Jersey wiretap statute." <u>Pascale v. Carolina Freight Carriers Corp.</u>, 898 F.Supp. 276 (D.N.J. 1995). Accordingly, this Court has turned to federal as well as New Jersey precedent for assistance in construing the meaning of the New Jersey statutory phrase "for the purpose of committing any other injurious act."[3] Because Plaintiffs carry the burden of proving an impermissible purpose by a preponderance of the evidence, <u>United States v. Phillips</u>, 540 F.2d 319, 326 n.3 (8th Cir. 1976), failure to adduce sufficient evidence to create a triable issue of fact with respect to the purpose of the disputed interception would require the Court to dismiss the instant action and grant the pending summary judgment motions. Moreover, if the interception itself, as recorded by co-Defendant Thomas L. Weisenbeck, was not illegal under the anti-wiretap statutes, none of the other co-Defendants may be held liable as intentional users, 17 U.S.C §2511(1)(c) or intentional disclosers, 17 U.S.C §2511(1)(d), of the information.[4]

---

[3] The New Jersey act is more restrictive than the federal act in some respects. <u>See</u> <u>State v. Catania</u>, 85 N.J. 418, 436-439, 427 A.2d 537 (1981). However, where particular provisions are "substantially similar in language", New Jersey courts have been "satisfied that the Legislature's intent in enacting the sections of the Wiretapping and Electronic Surveillance Act pertinent to [the] case was simply to follow the federal act." <u>Fornino</u>, 539 A.2d at 544. Such is clearly the case with the one-party consent exception to the prohibition against interceptions, since the language of the parallel federal and New Jersey prohibition prior to the 1986 amendments was identical. The Court has only relied on federal case law precedent where the facts in dispute were subject to the original pre-1986 Title III exception, or where the deciding court explicitly purports to construe the term "for the purpose of committing any other injurious act".

[4] <u>See</u> <u>Bast v. Cohen, Dunn & Sinclair, PC</u>, 59 F.3d 492 (4th Cir. 1995) (observing that "to be liable under an expanded section 2511 theory, the appellees would have to have known, or have had reason to know, that [interceptor] had a criminal or tortious motive in creating the tapes."); <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994) (stating that "liability for disclosure or use requires proof that it was intentional, that the information was obtained from an intercepted communication, and that the defendant knew or should have known that the interception was illegal.").

7

## 5. Discussion

Plaintiffs contend that the one-party consent exceptions are inapplicable to Defendants' interceptions because the purpose behind recording the contractual negotiations was to subsequently commit an injurious act against Plaintiffs.[5] As a preliminary matter, the Court does not find any basis for a jury to conclude that Defendants acted for any purpose other than to prepare a potential lawsuit against Plaintiffs. In his affidavit, attorney Thomas L. Weisenbeck affirmed that:

> "The decision to record the conversations was made in order to protect the interests of my client, to avoid the possibility that Jose Betancourt might attempt later to distort our conversations or any agreement which we may have reached orally, and to otherwise keep the most accurate record possible of what transpired over the telephone. I also recognized that the recordings could be significant in the event that litigation arose regarding the fixed sum deposit."

---

[5] Plaintiffs also attempt to void the federal one-party consent exception based on a "violation of the law" within the statutory meaning. However, they must rely on a statute violated or a tort committed separate from the interception itself, the New Jersey anti-wiretap statute or other New Jersey privacy laws. As the court in Roberts v. Americable Intern. Inc., 883 F.Supp. 499 (E.D.Cal 1995) stated, this Court should:

> "not interpret the federal limited permission to intercept oral conversations granted by § 2511(2)(d) to be negated by state law which itself may invalidate such interception, and which itself may render such interception tortious. Clearly, Congress must have had in mind when enacting the "one party consent" exception pertinent here that state law regarding tape recording of conversations might be more strict than federal law [internal citation omitted]. Nevertheless, Congress chose to permit a "one party consent" rule, and it is therefore unwise to interpret this permission in federal cases in such a manner that it is automatically voided by the mere presence of a stricter state law." Id. at 503.

See also Boddie v. American Broadcasting Companies, Inc., 731 F.2d 333, 339 (6th Cir. 1984) observing that "[t]he Wiretap Statute requires the plaintiff to show that the defendants intended an illegal, tortious or injurious act *other than the recording of the conversation*.") (emphasis added); Stamatiou v. United States Gypsum Co., 400 F.Supp. 431, 436 n. 3 (N.D.Ill.1975), aff'd mem., 534 F.2d 330 (7th Cir. 1976). Other than malicious prosecution, analyzed below, Plaintiffs have not identified any additional statute or tort that Defendants allegedly violated or committed.

(Appendix to Defendants BA&R and Thomas L. Weisenbeck's Motion for Summary Judgment, Docket No. 91 at 3). In fact, Plaintiff Jose Betancourt himself admitted as much, when he deferred the identification of additional motivations behind the interception to the prospective jurors' determination:

> Q   So you are claiming that the recordings were made with the intent of causing you harm, is that correct?
> A   They, the recordings and utilization and et cetera, did cause me harm, yes.
> Q   And the intent was to cause you harm?
> A   As you well know, the intent is what the honorable judge has mentioned that a jury will determine. I don't think I am the one that has to determine that in a deposition. I don't want to – I am not a lawyer, I cannot elaborate on the theory, et cetera, that the jury will determine that.
> Q   Okay. My question to you would be then, are you contending that any of the defendants intended to cause you harm when they tape recorded the conversations, whoever recorded them?
> A   I would think so. Because Mr. Weisenbeck has stated that they – these recordings and the transcripts were made in preparation for the litigation. So it is obvious it was done with the intent to harm myself, my father and the company.

(Oral Deposition of Jose Betancourt, Exhibit F, Plaintiffs' Exhibits in Support of Plaintiffs' Statement of Contested Facts, Docket No. 104 at p. 197). Notwithstanding, since "[t]rial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice'", Poller v. Columbia Broad. Sys., 368 U.S. 470, 473, 82 S.Ct. 486, 491 (1962), the Court has scoured the record, and has not found any evidence, through affidavit or otherwise, that the phone conversation was recorded to further blackmail, coercion, public humiliation or any other action other than the institution of a civil lawsuit.

9

The Court now turns to the applicability of the statutory term "tortious act" or "injurious act" to Defendants' prior RICO civil lawsuit. Precedent has clearly established that "when the purpose of an interception is to make or preserve an accurate record of a conversation in order to prevent future distortions by a participant, the interception is legal", U.S. v. Underhill, 813 F.2d 105 (6th Cir. 1987), even if "you want to use the recording in evidence." Moore v. Telfon Communications Corp., 589 F.2d 959, 965 (9th Cir.1978). Moreover, the interceptor may also legally use the interception as a plaintiff in the subsequent lawsuit, since the distinction "[w]hether plaintiff's intent was for a 'defensive' or 'offensive' purpose is also without merit." Consumer Electronic Products, Inc. v. Sanyo Elec., Inc., 568 F.Supp. 1194, 1197 (D.Colo. 1983).[6] As the Court in Meredith v. Gavin, 446 F.2d 794, 799 (8th Cir. 1971) stated, "a perfectly legitimate act may often be injurious... [b]ut all parties have a right to proceed under the law and to protect their own rights." See also U.S. v. Dale, 991 F.2d 819 (D.C.Cir. 1993) (commenting that taping phone calls to make an accurate record of a conversation

---

[6] As the court explained in Gavin, 446 F.2d at 798 n.5, the distinction between offensive and defensive use advanced in this case by plaintiff arises only from a broad interpretation of a statement made by Senator Hart, while objecting to the overly permissive nature of the statute, before the current language was enacted as § 2511(2)(c) and (d). The statute originally exempted any interception where one of the parties consented. In a statement in support of a more limited exception, Hart argued that without the criminal, tortious, or injurious act language, a party could monitor the communication for "insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws," 2 U.S.Code Cong. and Ad.News, 90th Cong., 2d Sess., pp. 2112, 2236. Plaintiffs do not allege blackmail, defamation, theft of business secrets or any such offenses in the instant case, and the courts have repeatedly rejected a distinction between offensive and defensive intent when the interception is made in preparation for litigation. See also By-Prod Corp. v. Armen-Berry Co., 668 F.2d 956, 959 (7th Cir.1982) (holding that the statute was not violated by interceptor who had initiated an antitrust suit "hoped [the tape] would produce evidence of an illegal conspiracy"); Sanyo, 568 F.Supp. at 1194.

10

"is not illegal, even when the recording is made in the hopes of producing evidence of an illegal conspiracy By- Prod. Corp. v. Armen-Berry Co., 668 F.2d 956, 959-60 (7th Cir.1982). A person may even tape confederates in the hope of obtaining evidence to reduce his own sentence. United States v. Ruppel, 666 F.2d 261, 271 (5th Cir. Unit A), cert. denied, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982)."

Evidently, if Defendants' institution of a routine civil lawsuit constituted the extent of the alleged "injurious act" or "tortious act", the relevant inquiry would be over. However, Plaintiffs further allege that Defendants filed a baseless, vindictive Racketeering Influenced and Corrupt Organization (RICO) civil action that "was litigated for two full years at great financial expense to [Plaintiff Jose Betancourt and his company] only to be dismissed at the eleventh hour", which "generated a substantial amount of negative publicity" and whose result was "devastating for the professional, commercial and financial well-being of both [Plaintiff Jose Betancourt] and [his] musical concert production company" (Plaintiffs' Reply to Defendants' July 28, 1997 Filing, Docket No. 10, Exhibit A at pp.1-2). The Court harbors serious reservations, in light of the virtually unanimous precedent cited previously, about extending the scope of Section 2A:156A-4 of the New Jersey Wiretapping and Electronic Surveillance Control Act to any civil action, regardless of severity, foundation or motivation, that falls short of state (in this case, New Jersey) common law requirements for malicious prosecution, a "tortious act" under both Section 2A:156A-4 and 18 U.S.C. 2511(2)(d).[7]

---

[7] Under New Jersey common law, a malicious prosecution cause of action has four separate elements which must be asserted: (1) the original claim was brought without reasonable or probable cause; (2) that claim was motivated by malice; (3) the underlying claim had been terminated favorably to the plaintiff in the malicious prosecution action; and (4) that plaintiff had suffered a special grievance. Penwag Prop. Co. v. Landau, 76 N.J. 595, 598, 388 A.2d 1265 (1978). Although the parties have not briefed the issues, it appears that Plaintiffs would be hard

11

Notwithstanding, assuming without deciding that a vexatious and unfounded lawsuit may constitute an "otherwise injurious act" under the New Jersey statute, Plaintiffs fail to present sufficient evidence to raise a triable issue of fact. In an Opinion and Order dated June 28, 1996, Nippy, Inc. v. Pro Rok, Inc., 932 F.Supp. 41 (D.P.R. 1996), Judge Hector Laffitte allowed then-Plaintiff Nippy Inc. to withdraw its RICO lawsuit with prejudice without imposition of attorney fees under federal or Puerto Rican law, or sanctions under Fed. R. Civ. P. 11, but with imposition of costs. Chief Judge Laffitte specifically stated that "[t]he record does not indicate that Plaintiff has acted in bad faith, wantonly, vexatiously, or for an oppressive reason", id. at 43, nor did the record indicate "that Plaintiff filed pleadings or other motions with the purpose of harassing, causing unnecessary delay, or needlessly increasing the cost of litigation.", id. at 44. Judge Laffitte added that

> "Plaintiff did not demonstrate stubbornness in the discovery process or disregard for the Court's orders. There were several discovery disputes in this case, but the contentiousness of these disputes does not constitute obstinacy by any of the

---

pressed to meet the fourth element,"special grievance" requirement. The Superior Court of New Jersey, Appellate Division, has proffered that "examples of such interference or deprivation sufficient to constitute the requisite special grievance are the appointment of a receiver, filing of a petition in bankruptcy, granting of an injunction, issuance of a writ of attachment or writ of replevin, filing of a *lis pendens*, issuance of an order of arrest, wrongful interference with possession or enjoyment of property, etc. [citations omitted]. Where such special grievance exists the aggrieved party is entitled to recover all damages, including the element of costs and counsel fees in defense of the action." [citation omitted]. Penwag Property Co., Inc. v. Landau, 148 N.J.Super. 493, 501, 372 A.2d 1162, 1166 (N.J.Super.A.D. 1977). Chief Judge Laffitte's refusal to impose attorneys' fees on Defendants in the prior litigation, Nippy, Inc. v. Pro Rok, Inc., 932 F.Supp. 41 (D.P.R. 1996), would seem to preclude malicious prosecution liability against Defendants under New Jersey law, and therefore preclude the application of the "tortious activity" exception under the federal and New Jersey anti-wiretap statutes. Notwithstanding since the Court finds that Plaintiffs failed to adduce any evidence that the civil RICO lawsuit was unfounded in fact or filed in bad faith, the Court need not resolve the "special grievances" state law question.

parties. Additionally, Plaintiff did not demonstrate temerity in settlement negotiations. In general, the Court finds that Plaintiff's conduct did not act obstinately or frivolously." Id.

In light of these explicit, unequivocal findings of fact and holdings of law by Chief Judge Laffitte, the Court cannot agree with Plaintiffs' claims that certain other concurrent remarks by Judge Laffitte in Nippy v. Pro-Rok, constitute evidence that the RICO civil lawsuit was "an injurious act" under the federal and New Jersey anti-wiretap statutes. Judge Laffitte indicated that he was "troubled" by Nippy Inc.'s use of a RICO lawsuit, which involves "serious allegations of enormous consequences", and more specifically, by Plaintiffs failure to dismiss the claim at an earlier stage before substantial judicial and private resources had been wasted. However, these statements cannot be reasonably read to contradict Chief Judge Laffitte's categorical and unequivocal statements that the civil RICO lawsuit was not vexatious or brought for the purposes of harassment.[8]

---

[8] The Court declined to adopt (Opinion and Order, Docket No. 18) Magistrate Judge Justo Arenas' Report and Recommendation (Docket No. 15) that all claims against Defendants be dismissed, relying heavily on Plaintiffs assertions (Opposition to Magistrate's Report and Recommendation, Docket No. 17 at p.4) that they had

> "a *finding of fact* (emphasis in original), made by none other than a United States District Court Judge, that the actions of the defendants in instituting, pursuing and handling the litigation of reference constituted an abuse of the legal process, which was further labeled as troubling by the Article III Judge, and which the Court found to be a sufficient basis to support the rare imposition of monetary sanctions."

The Court notes that, when considered in the context of the actual findings made by the Judge, this statement is an inaccurate rendition of Judge Laffitte's remarks. When presented alone and outside of context, as Plaintiffs did, the statement strays dangerously close to sanctionable conduct under Fed. R. Civ. P. 11. Since the responsible attorney withdrew from representing Plaintiffs shortly after submitting the objectionable filing, the Court declines to

13

More importantly, after discovery in the instant (and the preceding) civil actions among the parties has run its course, and despite their insistent attempts to utilize the anti-wiretap statutes as a back door to re-litigate their contractual disputes with Defendants, Plaintiffs have not set forth a single scintilla of evidence to show that the factual allegations in the preceding RICO civil lawsuit were not reasonably grounded in fact, or to contradict Judge Laffitte's holding that the action itself was not vexatious or brought in bad faith. Defendant Thomas L. Weisenbeck affirmed in his deposition that the decision to discontinue the civil RICO litigation was made

> "after it was determined that financial recovery against the Betancourts would be unlikely. Jose Betancourt had testified in his deposition that Pro-Rok continually lost money on its promotions and relied on small short term loans from Humberto Betancourt. Jose Betancourt also testified as to his limited employment background before becoming a promoter. Our client's potential for recovering a monetary judgment against Humberto Betancourt was also questionable, because we could not make a reliable determination as to his assets. The decision not to pursue the litigation was thus based solely on economic reasons. There was simply no point to Nippy Inc. incurring additional legal fees and expenses."

(Appendix to Defendants BA&R and Thomas L. Weisenbeck's Motion for Summary Judgment, Docket No. 91 at 3). Plaintiffs do not submit a contrary fact to this sworn testimony, and their sole response (Opposition to Magistrate Judge's Report and Recommendation, Docket No. 17 at p.4) was that "a party's action in moving to dismiss a civil RICO lawsuit, with prejudice and without requesting monetary compensation, is an unprecedented and rare action indeed, richly deserving of being labeled an abuse of process, as the District Court did." This two year old

---

pursue the matter in deference to giving the attorney his day in court. However, the fact remains, at this stage of the proceedings, after two years of discovery, distortions of Chief Judge Laffitte's remarks are no longer sufficient to stave off dismissal of Plaintiffs' claims.

14

argumentative proclamation hardly qualifies as evidence that the RICO civil lawsuit was frivolous or brought in bad faith. As the Court in <u>Cortes-Irizarry v. Corporacion Insular</u>, 111 F.3d 184, 187 (1st Cir. 1997) stated, for purposes of summary judgment, an issue concerning a material fact is "genuine" only if "a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." In the absence of any evidence to examine, the Court cannot identify a genuine, triable issue of fact as to whether the RICO civil action filed by Defendant Nippy, Inc. in June 1994 constituted an injurious act.

Moreover, even if the RICO lawsuit did indeed constitute an "injurious act" within the statutory meaning, Plaintiffs have proffered no evidence that, *at the time the recordings were made*, Defendants already intended to commence frivolous litigation against Plaintiffs. See <u>Desnick v. American Broad. Cos. Inc.</u>, 44 F.3d 1345 (7th Cir. 1995) (granting motion to dismiss claim under federal anti-wiretap statute against defendant tabloid news show because even if the eventual broadcast was in fact ultimately defamatory, there was no evidence that the interception itself was done for the purpose of committing the tort of defamation). In his deposition, Defendant Thomas L. Weisenbeck merely affirms that he "recognized that the recordings could be significant in the event that litigation arose regarding the fixed sum deposit" (Appendix to Defendants BA&R and Thomas L. Weisenbeck's Motion for Summary Judgment, Docket No. 91 at 3). In fact, the Complaint in the civil RICO action brought by Nippy Inc. alleged the submission of inflated expense reports in order to defraud Defendant Whitney Houston and her production team of their contractual share concert proceeds (Plaintiffs' Statement of Contested Facts, Docket No. 104, Exhibit G). Since most of these alleged falsifications could not have

15

occurred until after the recorded interception, it would have been very difficult for Defendants to form the intent, or even conceive, of invoking the RICO act without knowledge of these purported fraudulent actions. Although the Court is vividly aware that a summary judgment motion leaves "no room for the judge to superimpose his own ideas of probability and likelihood", Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987) it remains true that "the non-moving party must produce evidence on which a reasonable trier of fact, under the appropriate proof of burden, could base a verdict for." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F3d. 94, 95 (1st Cir 1996). Plaintiffs have not proffered any evidence whatsoever to meet their affirmative burden of proof, Phillips, 540 F.2d at 326 n.3, that at the time the recordings were made, Defendants intended to file any lawsuit, let alone a frivolous one.

Finally, Plaintiffs seem to advance, without explicitly stating, a theory that Defendant Houston engaged in a comprehensive and multifaceted campaign to affirmatively destroy Plaintiffs' music production business, and that such scheme is sufficient to constitute an "injurious act" within the meaning of the statute, independent from, or at least additional to, the institution of a baseless vindictive lawsuit. As evidence, Plaintiffs tender certain newspaper and magazine articles from *The San Juan Star*, *The Las Vegas Review-Journal*, *El Vocero* and *Pollstar Magazine* (Plaintiffs' Statement of Contested Facts, Docket No. 104, Exhibits R, S, T and U respectively) and a short letter (Plaintiffs' Statement of Contested Facts, Docket No. 104, Exhibit Q) from the Las Vegas management agency 'D & E Enterprises, Inc.' explaining their refusal to book concert acts with Plaintiffs. However, these exhibits hardly provide any support to Plaintiffs' theory. Except for *El Vocero* (Exhibit T), all the other articles are mere high-level

16

summaries of the allegations in the RICO lawsuit. Even the *El Vocero* column indirectly springs, despite its quintessentially hearsay content,[9] from the RICO lawsuit. Moreover, none of the publications make any mention whatsoever of the recorded conversations, and the memo from 'D & E Enterprises' specifically identifies the RICO lawsuit as the motivating factor behind the denial of the requested bookings. Quite simply, Plaintiffs have not set forth any evidence of a nexus, separate and independent from the civil RICO lawsuit, between these exhibits and the allegedly illegal interception.

  In fact, the Court notes that circumstantial evidence of the "injurious" nature of the interception's purpose, in addition to the sworn testimony previously cited, favors Defendants. The plain language of the statute explicitly requires, not merely ill will or animosity towards the intercepted party, but the specific intent of the intercepting party to commit an injurious act. After careful review of the entire record, the only indirect, inferential evidence available from which a jury may be able to discern, from events occurring after the recording, Defendants' intent at the time such recording was made, is the use actually made of the taped conversation. Defendants ultimately used the transcripts of the recorded conversations to impeach the testimony of co-Plaintiff Jose Betancourt on April 26, 1996, nearly two years after the civil RICO action was initially filed. Such evidence would tend to support a finding that Defendants

---

[9] The Court notes that, despite Defendants' protestations (Motion to Strike Exhibits A,R,S,T and U, Docket No. 116) Exhibits R, S, U, and Q are clearly not hearsay because Plaintiffs submitted the articles to show that negative press about their production company did indeed result from the institution of the RICO claim. They did not proffer the articles to prove the truth of what the publications reported, which, in any case, has always been publicly available from other sources. However, Exhibit T, which purports to report derogatory statements about Plaintiffs that Defendant Houston was supposedly making to television news anchors, is clearly inadmissible hearsay of questionable relevance.

17

intended to preserve evidence for potential future defensive use, rather than to concoct an evil, baseless lawsuit. As the Court in Meredith, 446 F.2d at 799, expressed, use of the recording for impeachment:

> "[w]ould have been to protect the defendants' position, not to positively harm the plaintiff. Surely it could not be contended that the plaintiff was free to make one statement to the defendant Gavin over the phone, and then to make an entirely different one in the compensation proceedings, without fear of contradiction."

The Court notes that Plaintiffs should hardly be surprised at the repetition of the same mantra, "Plaintiffs have shown no evidence...", over and over again in an apparently cursory manner. Out of Plaintiffs' Statement of Contested Facts and Memorandum of Law (Docket No. 104), only facts nos. 6, 13, 15 (out of a total of 19) in their Opposition to co-Defendants WMA and Kim Jones' Motion for Summary Judgment bear, even if obliquely, on the issue of intent or the injurious nature of the previous RICO lawsuit. In addition, only fact no. 12 (out a total of 13) in Plaintiffs' Opposition to co-Defendants Whitney Houston, John Houston and Nippy Inc.'s Motion for Summary Judgment, and fact no. 1 (out of a total of 1) in their Opposition to co-Defendants BA&R and Thomas L. Weisenbeck's Motion for Summary Judgment address this critical, dispositive issue. Even these so-called 'facts' consist of little more than unsupported inferences, conclusory allegations and dramatic metaphors. It is well established that "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion." Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

18

In summary, Plaintiffs have failed to advance any evidence that the civil RICO lawsuit previously filed by certain Defendants against Plaintiffs was unfounded or vexatious so as to constitute "an injurious act" within the meaning of Section 2A:156A-4 of the New Jersey Wiretapping and Electronic Surveillance Control Act or a "tortious act" within the scope of Section 2511(2)(d) of Title III of the Omnibus Crime Control and Safe Streets Act. Moreover, Plaintiffs have not set forth any evidence that Defendants specifically intended to file a civil RICO lawsuit at the time the conversation was recorded. Certainly, the Court is mindful that the test for summary judgment should be applied with the highest rigor when a disputed issue turns on a question of motive and intent. See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 83 (1st Cir. 2000). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996). As the court in By-Prod Corp., 668 F.2d at 959, stated in a remarkably similar context, "this is the unusual case where an issue of intent can properly be resolved without a trial." See also Consumer Electronic Products, 568 F.Supp. at 1197 (observing that plaintiffs' "effort to sidestep the lack of a factual dispute by characterizing the issue as one of injurious intent, requiring a jury determination, is also unpersuasive. While intent is normally a question for the trier of fact, it is still necessary to raise a factual issue which could conceivably result in more than one outcome."). As the Court in Griggs-Ryan v. Smith, 904 F.2d 112 (1st Cir. 1990), in granting summary judgment to anti-wiretap statute defendant on a question of plaintiff's implied consent, so eloquently put it, "[t]urning up the volume, however, cannot mask the paucity of content contained in plaintiff's

19

argumentation." Therefore, for the reasons set forth above, Defendants' several summary judgment motions (Docket Nos. 86, 89, 91 and 92) are hereby **GRANTED**, the Motion to Dismiss (Docket No. 90) and Supplemental Motion to Dismiss (Docket No. 111) are accordingly **DENIED/MOOT**, and the instant civil action is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

March /6, 2001

DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

AO 72
(Rev 8/82)